USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 08/20/19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
:
ALLSTAR MARKETING GROUP, LLC, :
:
Plaintiff, :
:
-v- : 1:18-cv-4101-GHW
:
158 et al., : MEMORANDUM OPINION
: AND ORDER
Defendants. :
:
------------------------------------------------------------- X

GREGORY H. WOODS, United States District Judge:

Plaintiff filed this case in May 2018 against a litany of defendants for infringing Plaintiff's trademark and copyrights associated with its True Touch product, a wearable pet grooming glove. On March 12, 2019, the Court granted Plaintiff's motion for default judgment against certain remaining defendants who had not appeared in this action (the "Defaulting Defendants"). On the same day, the Court entered an order explaining its decision to deny two categories of relief requested by the Plaintiff in its proposed default judgment, which the Court referred to as the "Freeze and Turn Over Request" and the "Shut Down Request." *See* Dkt. No. 67. On April 19, 2019, Plaintiff filed a motion requesting that the Court reconsider its decision to deny those two categories of relief. Dkt. No. 77. For the reasons set forth below, Plaintiff's motion for reconsideration is DENIED.

I. LEGAL STANDARD

"Generally, 'an injunction is a matter of equitable discretion; it does not follow from success on the merits as a matter of course.'" *EEOC. v. KarenKim, Inc.*, 698 F.3d 92, 100 (2d Cir. 2012) (quoting *Winter v. Natural Res. Defense Council Inc.*, 555 U.S. 7, 32 (2008)) (internal alteration omitted); *see also eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 392-93 (2006) ("[T]his Court has consistently

rejected invitations to replace traditional equitable considerations with a rule that an injunction automatically follows a determination that a copyright has been infringed.").

Motions for reconsideration are governed by Local Rule 6.3, which provides that the moving party shall set forth "the matters or controlling decisions which counsel believes the Court has overlooked." "Motions for reconsideration are . . . committed to the sound discretion of the district court." *Immigrant Def. Project v. U.S. Immigration and Customs Enforcement*, No. 14-cv-6117 (JPO), 2017 WL 2126839, at *1 (S.D.N.Y. May 16, 2017) (citing cases). "Reconsideration of a previous order by the Court is an extraordinary remedy to be employed sparingly." *Ortega v. Mutt*, No. 14-cv-9703 (JGK), 2017 WL 1968296, at *1 (S.D.N.Y. May 11, 2017) (quoting *Anwar v. Fairfield Greenwich Ltd.*, 800 F. Supp. 2d 571, 572 (S.D.N.Y. 2011)). As such, reconsideration should be granted only when the moving party "identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Robinson v. Disney Online*, 152 F. Supp. 3d 176, 185 (S.D.N.Y. 2016) (quoting *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust*, 729 F.3d 99, 104 (2d Cir. 2013)) (internal quotation marks omitted).

## II. DISCUSSION

### A. The Freeze and Turn Over Request

Plaintiff's proposed default judgment included a section entitled "Post-Judgment Asset Transfer Order and Asset Freeze Order," which the Court referred to as the "Freeze and Turn Over Request." That section—in broad strokes—included three types of injunctive relief. First, it provided that all of the Defaulting Defendants' accounts and assets which were frozen by the Court's May 17, 2018 temporary restraining order and May 30, 2018 preliminary injunction, Dkt. Nos. 22, 27, would remain frozen. Second, the proposed default judgment required that all banks, financial institutions, credit card companies, and payment processing agencies which were in

possession of the Defaulting Defendants' frozen assets[1] transfer those assets to Plaintiff in satisfaction of the monetary judgments rendered against the Defaulting Defendants. Finally, if Plaintiff were to discover any additional assets of the Defaulting Defendants after the date of the judgment, the proposed default judgment would have authorized Plaintiff to require that any bank, financial institution, credit card company, or payment processing agency holding those assets transfer them to Plaintiff in satisfaction of the judgment without further action by the Court.

As explained in its March 12, 2019 order, the Court declined to include Plaintiff's proposed asset freeze and turn over provisions in the final judgment based on its conclusion that the requested relief was overbroad. The Court also found that the request ran afoul of Fed. R. Civ. P. 69, which states: "The procedure on execution—and in proceedings supplementary to and in aid of judgment or execution—must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies." The Court considered whether 15 U.S.C. § 1116—which authorizes a court to enter injunctive relief to prevent violations of the Lanham Act—would support the requested relief, but concluded that that provision should not be extended to include injunctive relief designed solely to aid in the collection of money damages.

In its motion for reconsideration, Plaintiff argues that the Court should have ordered the asset freeze and turnover, pointing to Fed. R. Civ. P. 65, 15 U.S.C. § 1116(a), and Article 52 of New York State's Civil Practice Law and Rules as potential sources of authority for such an injunction.[2] As an initial matter—and as previously noted by the Court in its March 12, 2019 order—the language of Rule 69 is mandatory. If Plaintiff wishes to enforce its monetary judgment, it *must* do so

---

[1] Plaintiff represented during the March 6, 2019 show cause hearing that the only institutions holding the Defaulting Defendants' frozen assets were Wish.com and PayPal. *See* March 6, 2019 Transcript, Dkt. No. 73, at 17:10-12.
[2] Although Plaintiff no longer argues that Fed. R. Civ. P. 64 supports its requested injunctive relief, the Court notes that several of the cases cited by Plaintiff in its motion for reconsideration purport to rely on Rule 64 as the basis for entering the final injunctive relief Plaintiff has proposed. For the sake of clarity, the Court notes once again that Rule 64 applies to provisional remedies, not final relief, and therefore provides no authority for the relief requested here. *See* 11A Fed. Prac. & Proc. Civ. § 2931 (3d ed.) ("Rule 64 speaks to provisional remedies prior to judgment. Other rules regulate remedies to enforce a judgment.").

3

in accordance with the procedures set forth by New York law, specifically C.P.L.R. Article 52. Fed. R. Civ. P. 69. The Court is therefore skeptical that Rule 65 or 15 U.S.C. § 1116(a) can be used to support an injunction that blatantly circumvents the requirements of Rule 69. *See Tiffany (NJ) LLC v. QI Andrew*, No. 10-cv-9471 (KPF), 2015 WL 3701602, at *12 (S.D.N.Y. June 15, 2015) ("[T]he Court is unconvinced that a Rule 65 injunction is an appropriate vehicle for the postjudgment restraint. A plaintiff's ordinary recourse upon securing a money judgment is to look to postjudgment remedies provided by Fed. R. Civ. P. 69 and state law.").[3] Nor is it clear that either Rule 65 or 15 U.S.C. § 1116(a) provides authority for the relief requested by Plaintiff.

First, Rule 65, which governs injunctions and restraining orders, clearly states who may be bound by a court's injunction: "the parties," "the parties' officers, agents, servants, employees, and attorneys," and "other persons who are in active concert or participation with [the parties or their officers, agents, servants, employees, and attorneys]." Fed. R. Civ. P. 65(d)(2). "Rule 65(d) 'is designed to codify the common-law doctrine that defendants may not nullify a decree by carrying out prohibited acts through aiders and abettors, although [those aiders and abettors] were not parties to the original proceeding.'" *Doctor's Assocs., Inc. v. Reinert & Duree, P.C.*, 191 F.3d 297, 302-03 (2d Cir. 1999) (quoting *Heyman v. Kline*, 444 F.2d 65, 66 (2d Cir. 1971)). It therefore represents "an exception to the general principle that a court cannot 'make a decree which will bind any one but a party.'" *Id.* at 302 (quoting *Alemite Mfg. Corp. v. Staff*, 42 F.2d 832, 832 (2d Cir. 1930) (L. Hand, J.)).

---

[3] Plaintiff argues that the court's decision in the *QI Andrew* case improperly found that the Supreme Court's decision in *Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.*, 527 U.S. 308 (1999)—which held that district courts lack the power to issue a preliminary injunction preventing defendants from transferring assets when no lien or equitable interest in those assets is claimed—barred a post-judgment asset freeze injunction. However, the Court in its March 12, 2019 decision did not rely on the *QI Andrew* case for its analysis of *Grupo Mexicano*, but solely for the proposition that the appropriate mechanism to enforce a monetary judgment is Rule 69. The Court expresses no opinion at this time on whether *Grupo Mexicano* bars the relief sought here and simply notes that this issue has divided courts in this district. Compare *WowWee Grp. Ltd. v. Meirly*, No. 18-cv-706 (AJN), 2019 WL 1375470, at *11 (S.D.N.Y. Mar. 27, 2019) (concluding that the logic of *Grupo Mexicano* prohibited plaintiff's requested post-judgment asset freeze), *with Tiffany (NJ) LLC v. Forbse*, No. 11-cv-4976 (NRB), 2015 WL 5638060, at *3-4 (S.D.N.Y. Sept. 22, 2015) (holding that *Grupo Mexicano* does not require district courts to reject post-judgment asset restraints).

Plaintiff's proposed asset freeze and turn over provisions are not directed at the Defaulting Defendants; instead, they are directed at Wish.com and "[a]ny and all banks, financial institutions, credit card companies and payment processing agencies" who either held the Defaulting Defendants' frozen assets or in the future might come into possession of the Defaulting Defendants' assets.  The Court cannot conclude that a third-party who merely holds the Defaulting Defendants' assets—which may be wholly unrelated to the counterfeiting at issue in this case—is by definition "in active concert or participation" with the Defaulting Defendants.  *See, e.g., John Wiley & Sons, Inc. v. Book Dog Books, LLC*, 327 F. Supp. 3d 606, 638 (S.D.N.Y. 2018) ("Courts in this Circuit have found 'active concert' between non-parties and already-enjoined parties in cases where an enjoined party is *substantially intertwined* with a non-party, including the shared occupation of office space, payment of employee expenses between the non-party and enjoined party, considerable control by the enjoined party over the non-party's operations, and other substantial interconnections." (emphasis added) (internal quotation omitted)).  Rule 65 cannot be used to support the proposed injunction, which purports to bind non-parties whose identities and relationships to the Defaulting Defendants are largely unknown and unascertainable.

Under 15 U.S.C. § 1116(a), "[c]ourts 'have power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark' or to prevent further violation of the Lanham Act . . . by the defendant."[4]  *Spin Master Ltd. v. Alan Yuan's Store*, 325 F. Supp. 3d 413, 427 (S.D.N.Y. 2018).  This provision of the Lanham Act codifies the traditional injunctive remedy available in infringement cases, normally awarded because limiting a plaintiff to monetary damages would be akin to creating "a judicially imposed compulsory license given to an infringer."  5 McCarthy on Trademarks and

---

[4] The Copyright Act contains a similar provision authorizing injunctive relief "to prevent or restrain infringement of a copyright."  17 U.S.C. § 502(a).

Unfair Competition § 30:1 (5th ed.). Accordingly, the Court found that Plaintiff is entitled to injunctive relief which bars the Defaulting Defendants from continuing to infringe Plaintiff's intellectual property. But a district court's power to enter an injunction under 15 U.S.C. § 1116(a) is not unlimited—instead the injunction must be "'narrowly tailored to fit specific legal violations' because the district court 'should not impose unnecessary burdens on lawful activity.'" *Starter Corp. v. Converse, Inc.*, 170 F.3d 286, 299 (2d Cir. 1999) (quoting *Waldman Publ'g Corp. v. Landoll, Inc.*, 43 F.3d 775, 785 (2d Cir. 1994)). As the Court expressed in its March 12, 2019 opinion, § 1116(a) makes clear that Plaintiff is not automatically entitled to the asset freeze and turn over relief it seeks; instead the question of the scope of the injunctive relief is left to the Court's discretion. Plaintiff has provided no reason why the Court should reconsider its prior conclusion that this requested relief is overbroad and unnecessary to achieve the purposes of § 1116(a).

Plaintiff also argues that the asset freeze and turn over relief it seeks is authorized by Rule 69 and C.P.L.R. Article 52, which governs the enforcement of money judgments. But the relief set forth in Plaintiff's proposed default judgment varies notably from the relief authorized by Article 52. Subject to restrictions not relevant here, under C.P.L.R. § 5222, a judgment creditor may serve a restraining notice on a person who holds property belonging to the judgment debtor in order to prevent that person from transferring the property except as authorized by a court order. C.P.L.R. § 5225 then allows the judgment creditor to commence a special proceeding[5] against the person in possession of the judgment debtor's property. If the court finds that it has personal jurisdiction over the garnishee and "it is shown that the judgment debtor is entitled to the possession of such property or that the judgment creditor's rights to the property are superior to those of the

---

[5] In federal court, a judgment creditor is not required to initiate a special proceeding, and instead can file a motion seeking a turn over order. *See CSX Transportation, Inc. v. Island Rail Terminal, Inc.*, 879 F.3d 462, 468-69 (2d Cir. 2018).

transferee," the court must then order the garnishee to turn over the property in its possession to the judgment creditor. C.P.L.R. § 5225(b).

Plaintiff's proposed injunctive relief contemplates a procedure that is the exact inverse of the procedure set forth in C.P.L.R. §§ 5222 and 5225. The relief which Plaintiff seeks is essentially equivalent to a "fill in the blank" order, which Plaintiff can serve at will in the future to brandish the Court's authority over unknown third-parties, the identifies of whom are unknown to the Court and over whom the Court may not possess personal jurisdiction. Furthermore, Plaintiff's proposed order does not provide the third-party an opportunity to assert its rights to the seized assets before the transfer is effectuated. *C.f.* C.P.L.R. § 5225(b). "Rule 69 permits a reasonable degree of flexibility in the application of state law," *see State Farm Mut. Auto. Ins. Co. v. Grafman*, No. 04-cv-2609 (NG) (SMG), 2017 WL 1683123, at *3 (E.D.N.Y. Mar. 8, 2017), *report and recommendation adopted*, 2017 WL 1735160 (E.D.N.Y. May 2, 2017), but it cannot be read to allow a plaintiff to entirely subvert state-mandated procedure simply by labelling its proposed relief as a "turn over order."

Plaintiff argues that it needs the type of flexible relief embodied in the freeze and turn over request to combat elusive international counterfeiters. The Court finds that argument unpersuasive. Despite the Court's refusal to enter the default judgment as proposed, Plaintiff is free to pursue any remedies available to it under the C.P.L.R. *See WowWee Grp. Ltd. v. Meirly*, No. 18-cv-706 (AJN), 2019 WL 1375470, at *11 (S.D.N.Y. Mar. 27, 2019) ("To the extent Plaintiffs are concerned about the risk that Defaulting Defendants will dispose of, transfer, or hide their assets, it should turn to the remedies ordinarily applicable to enforcement of judgments at law under Rule 69 and N.Y. C.P.L.R. § 5222."). And the procedure contemplated by the C.P.L.R. creates no greater risk that the Defaulting Defendants will attempt to evade judgment collection than does the freeze and turn over relief Plaintiff seeks. Plaintiff can just as easily serve a restraining notice pursuant to C.P.L.R. § 5222

7

as it can serve a copy of the order that it requested from the Court[6]—C.P.L.R. § 5225 simply requires Plaintiff to provide third-parties with notice and an opportunity to challenge a proposed turn over order *before* the order is issued.[7]  Accordingly, Plaintiff's motion for reconsideration regarding the Freeze and Turn Over Request is denied.

### B. The Shut Down Request

Plaintiff also contests the Court's refusal to enjoin Wish.com from providing services to the Defaulting Defendants, including "continued operation of Defaulting Defendants' User Accounts and Merchant Storefronts."  But Plaintiff's argument in its motion to reconsideration is identical to the argument presented to the Court during the order to show cause hearing:  Plaintiff claims that the broad injunction is necessary because Wish cannot prevent the Defaulting Defendants from using their user accounts to create new merchant storefronts and using their merchant storefronts to create new listings for counterfeit goods.  Because the Court sees no reason to depart from its previous position that an injunction which entirely prohibits Defaulting Defendants from accessing the Wish platform is overbroad, and because Plaintiff has failed to satisfy its burden on a motion for reconsideration—that is, identifying issues or controlling law which the Court has overlooked—

---

[6] Before 2018, Rule 62 appeared to require that a plaintiff wait 14 days after the entry of judgment before commencing an enforcement proceeding.  Therefore, reliance on Rule 69 procedures for enforcement raised the possibility that defendants would be able to move assets during the period of the automatic stay.  *See Tiffany (NJ) LLC v. Forbse*, 2015 WL 5638060, at *4 ("[T]he need for the [asset freeze] injunction is clear: without this relief, defendants would have available a fourteen-day window [under Federal Rule of Civil Procedure 62(a)] in which to hide their assets . . . . The risk that they might do so, which in part justified the preliminary injunction, is not lessened by the entry of judgment."). However, the 2018 amendment to Rule 62 expressly acknowledged that the district court has the power to terminate the automatic stay.  Thus, if a plaintiff is concerned that defendants might attempt to conceal assets during the pendency of the automatic stay, it should include a dissolution of that stay as part of the relief requested in its proposed judgment.
[7] The Court also notes that some courts in this district have included an asset freeze provision in their final default judgments which specifically incorporates the limitations of C.P.L.R. § 5222.  *See, e.g., Victorinox AG v. B & F Sys., Inc.*, No. 13-cv-4534 (JSR), 2018 WL 1801317, at *1 (S.D.N.Y. Mar. 27, 2018) (final judgment prohibited defendants from "making or suffering any sale, assignment, transfer, or interference with any property in which Defendants have an interest, pursuant to C.P.L.R. 5222(b), with the same effect as if a restraining notice had been served upon Defendants after judgment.").  The Court need not address whether this provision accords with Rule 69 because that language was not requested by Plaintiff, but at a minimum, the addition of language acknowledging that the asset freeze will operate in accordance with C.P.L.R. § 5222 substantially mitigates many of the issues raised by Plaintiff's proposed asset freeze provisions in this case.

8

Plaintiff's motion for reconsideration of the Court's refusal to grant the shut down relief request is also denied.

## III. CONCLUSION

The Court fully appreciates the harm associated with copyright infringement. The relief requested by Plaintiff here is an expedient mechanism to combat that harm. The Court also understands that many courts presented with similar requests in the context of default judgments have granted this type of relief. That too is expedient, given the lack of opposition to such requests. But expediency alone is not a sufficient basis on which to grant the injunctive relief requested here, which is both overly broad and sidesteps the important procedural safeguards contained in Fed. R. Civ. P. 69. For these reasons, Plaintiff's motion for reconsideration is DENIED.

The Clerk of Court is directed to terminate the motion pending at Dkt. No. 80.

SO ORDERED.

Dated: August 20, 2019  
New York, New York

GREGORY H. WOODS  
United States District Judge